1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOSE RODRIGUEZ GARCIA,

11           Petitioner,              No. CIV S-06-1404 FCD KJM P

12       vs.

13   E. EVANS,

14           Respondent.             FINDINGS & RECOMMENDATIONS

15   _____/

16           Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus under 28 U.S.C. § 2254.  Petitioner challenges his 2004 conviction, after a guilty

18   plea, of aggravated sexual assault on a child under the age of fourteen.  He seeks relief on the

19   grounds that his trial and appellate counsel rendered ineffective assistance, his plea of nolo

20   contendere was involuntary, and he was not given required warnings prior to a police

21   interrogation.  Upon careful consideration of the record and the applicable law, the undersigned

22   will recommend that petitioner's application for habeas corpus relief be denied.

23   /////

24   /////

25   /////

26   /////

                                        1

I.  Background

    A.  Factual Background[1]

> Defendant Jose Rodriguez Garcia raped his 12-year-old stepdaughter, Sarah S.  After waiving the preliminary hearing, he pleaded guilty to aggravated sexual assault on a child under the age of 14.  (Pen.Code, §§ 261, subd. (a)(2), 269, subd. (a)(1).)  The trial court dismissed two remaining counts pursuant to the plea agreement.  The trial court sentenced defendant to 15 years to life in prison.  It awarded him 281 days of presentence credit and imposed various statutory fines and fees.

    B.  Procedural Background

        Petitioner filed a timely appeal in the California Court of Appeal, Third Appellate District.  The court appointed counsel to represent petitioner on appeal. (Opinion at 1.)  Counsel filed an opening brief pursuant to People v. Wende, 25 Cal.3d 436 (1979), in which she set forth the facts of the case and requested that the appellate court review the record and determine whether there were any arguable issues on appeal.  (Id. at 1-2.)  Petitioner subsequently filed a pro se supplemental brief in which he claimed his constitutional rights were violated because: (1) police questioned him without advising him of his Miranda[2] rights; (2) the authorities violated federal law by failing to inform the Mexican consulate of his arrest; (3) the authorities failed to inform him of his rights under the Vienna Convention, in violation of California Penal Code section 834c; and (4) his trial counsel rendered ineffective assistance because he failed to warn petitioner about the immigration consequences of his plea.  (Id. at 2.)  The California Court of Appeal rejected all of petitioner's supplemental claims in a reasoned decision.  (Id. at 1-4.)

---

[1]  This statement of facts is taken from the March 28, 2005 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at page 1, lodged on February 28, 2007 as Lodged Document No. 5.  This court presumes the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not attempted to overcome the presumption with respect to the underlying events.  (Pet. at 6.)  The court will therefore rely on the state court's recitation of the facts.

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

1    On April 28, 2005, petitioner filed a pro se petition for review in the California

2    Supreme Court, in which he raised the same claims contained in his supplemental brief,

3    described above.  (Lodged Document No. 6.)  That petition was summarily denied by order dated

4    June 8, 2005.  (Lodged Document No. 7.)

5    On June 7, 2006, petitioner filed a pro se petition for a writ of habeas corpus in

6    the California Supreme Court, in which he raised essentially the same claims contained in the

7    instant petition.  (Lodged Document No. 8.)  That petition was summarily denied by order dated

8    December 20, 2006.  (Lodged Document No. 10.)

9    II.  Standards for a Writ of Habeas Corpus

10   An application for a writ of habeas corpus by a person in custody under a

11   judgment of a state court can be granted only for violations of the Constitution or laws of the

12   United States.  28 U.S.C. § 2254(a).  Also, federal habeas corpus relief is not available for any

13   claim decided on the merits in state court proceedings unless the state court's adjudication of the

14   claim:

15   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established federal law, as
16   determined by the Supreme Court of the United States; or

17   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
18   State court proceeding.

19   28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[3]  It is the habeas

20   petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See

21   Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

22   /////

23   /////

24

25   [3]  Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not
     grounds for entitlement to habeas relief.  Fry v. Pliler, __ U.S. __, 127 S. Ct. 2321, 2326-27
26   (2007).

3

1    The "contrary to" and "unreasonable application" clauses of § 2254(d)(1)  are

2 different.  As the Supreme Court has explained:

3          A federal habeas court may issue the writ under the "contrary to"
           clause if the state court applies a rule different from the governing
4          law set forth in our cases, or if it decides a case differently than we
           have done on a set of materially indistinguishable facts.  The court
5          may grant relief under the "unreasonable application" clause if the
           state court correctly identifies the governing legal principle from
6          our decisions but unreasonably applies it to the facts of the
           particular case.  The focus of the latter inquiry is on whether the
7          state court's application of clearly established federal law is
           objectively unreasonable, and we stressed in Williams [v. Taylor,
8          529 U.S. 362 (2000)] that an unreasonable application is different
           from an incorrect one.

9

10 Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the

11 law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

12 fails to cite or fails to indicate an awareness of federal law, so long as neither the reasoning nor

13 the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).

14 Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long

15 as the fair import of its conclusion is consonant with federal law.  Id.

16    The court will look to the last reasoned state court decision in determining

17 whether the law applied to a particular claim by the state courts was contrary to the law set forth

18 in the cases of the United States Supreme Court or whether an unreasonable application of such

19 law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

20 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial

21 of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court

22 must perform an independent review of the record to ascertain whether the state court decision

23 was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

24 words, the court assumes the state court applied the correct law, and analyzes whether the

25 decision of the state court was based on an objectively unreasonable application of that law.

26 /////

4

1    It is appropriate to look to lower federal court decisions to determine what law has

2    been "clearly established" by the Supreme Court and the reasonableness of a particular

3    application of that law.  "Clearly established" federal law is that determined by the Supreme

4    Court.  <u>Arredondo v. Ortiz</u>, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is

5    appropriate to look to lower federal court decisions as persuasive authority in determining what

6    law has been "clearly established" and the reasonableness of a particular application of that law.

7    <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 598 (9th Cir. 1999); <u>Clark v. Murphy</u>, 331 F.3d 1062 (9th

8    Cir. 2003), <u>overruled on other grounds</u>, <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003); <u>cf</u>. <u>Arredondo</u>,

9    365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of

10   Supreme Court precedent is misplaced).

11   III.  <u>Analysis</u>

12        A.  <u>Petitioner's Claims</u>

13        After a review of the petition and traverse filed by petitioner in this action, it

14   appears petitioner is raising the following claims: (1) his trial counsel rendered ineffective

15   assistance when he: (a) failed to present a defense to the charges; (b) failed to provide a Spanish

16   language translator and simply told petitioner to agree to the plea deal even though petitioner did

17   not understand English; (c) failed to communicate with petitioner; (d) failed to conduct sufficient

18   investigation; (e) failed to advise petitioner of the immigration consequences of his plea;

19   (f) falsely told petitioner that he would receive a sentence of life in prison without parole if he

20   did not enter into a plea agreement; (g) failed to raise a defense that petitioner lacked sufficient

21   education to enter into a plea agreement; (h) failed to request that petitioner receive a sentence of

22   outpatient psychiatric treatment; and (I) failed to advise the court of petitioner's "marital status

23   and children;" (2) his plea of guilty was invalid because he thought he would receive a sentence

24   of eight years in prison instead of fifteen years to life, he did not understand the immigration

25   consequences of his plea, and did not understand the proceedings; (3) his appellate counsel

26   rendered ineffective assistance when she filed a <u>Wende</u> brief without raising any specific issues,

1   failed to communicate with petitioner, and failed to argue on appeal that petitioner did not speak

2   English but was simply told by his defense counsel to agree to the plea deal; (4) the police

3   improperly questioned him without advising him of his <u>Miranda</u> rights; (5) the authorities

4   violated federal law by failing to inform the Mexican consulate of his arrest; and (6) the

5   authorities failed to inform him of his rights under the Vienna Convention, in violation of

6   California Penal Code § 834c.

7        B. <u>State Court Opinions</u>

8        As described above, on direct appeal petitioner claimed that the police improperly

9   questioned him without advising him of his <u>Miranda</u> rights; the authorities violated federal law

10   by failing to inform the Mexican consulate of his arrest; the authorities failed to inform him of

11   his rights under the Vienna Convention, in violation of California Penal Code § 834c; and his

12   defense counsel was ineffective because he failed to provide specific warning of the immigration

13   consequences of his plea.  The California Court of Appeal rejected these arguments, reasoning as

14   follows:

15      Defendant signed the change of plea form admitting that he was, in
      fact, guilty of aggravated sexual assault on a child under the age of
16      14.  He and his attorney stipulated that there was a factual basis for
      the plea.  Defendant expressly waived "any direct appeal [he
17      might] have, absent any appeal to sentencing error."  His notice of
      appeal states that his appeal is "based on the sentence or other
18      matters occurring after the plea."  At the same time, defendant
      requested and was granted a certificate of probable cause on the
19      representation that he could not understand the probation officer,
      his attorney, or the Spanish interpreter at trial.
20

21      Given this record, defendant waived any challenge based on the
      claimed violation of his rights under <u>Miranda</u> or the Vienna
22      Convention.  In any event, the failure to advise defendant of his
      rights under the Vienna Convention, as required by Penal Code
23      section 834c, does not result in the exclusion of a postarrest
      statement.[4]  (<u>People v. Corona</u> (2001) 89 Cal.App.4th 1426, 1429;

24

25      [4] Penal Code section 834c reads in relevant part: "(a)(1) In accordance with federal law
  and the provisions of this section, every peace officer, upon arrest and booking or detention for
26   more than two hours of a known or suspected foreign national, shall advise the foreign national

1      see also United States v. Lombera-Camorlinga (9th Cir. 2000) 206
     F.3d 882, 885.)

2

3      We also reject defendant's claim of ineffective assistance of
     counsel.  At the change of plea hearing, defendant stated that he
     had reviewed the plea form with his attorney.  He acknowledged by

4      his initials on the form that he understood the immigration
     consequences of his plea.  The written admonition stated that

5      "deportation and exclusion from the United States [would] occur
     as a result of [his] no contest/guilty plea to this charge."

6

7      Having undertaken an examination of the entire record, we find no
     arguable error that would result in a disposition more favorable to
     defendant.

8

9 (Opinion at 2-4.)

10      Petitioner's additional claims were summarily denied by the California Supreme

11 Court.  (Lodged Document No. 10.)  With respect to these claims, this court will independently

12 review the record to determine whether habeas corpus relief is available under section 2254(d),

13 while still deferring to the state court's ultimate decision.  Himes, 336 F.3d at 853; Pirtle v.

14 Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

15      C.  Discussion

16        1.  Ineffective Assistance of Counsel

17          a.  Trial Counsel

18      Petitioner raises numerous claims of ineffective assistance of trial counsel, as

19 described above.  Petitioner waived several of these claims when he pled guilty.  In particular, to

20 the extent petitioner's claims are based on trial counsel's asserted failure to conduct sufficient

21 investigation, present a defense, properly communicate with petitioner, request a sentence of

22 outpatient treatment, and advise the court of petitioner's marital and parental status, any such

23

24 that he or she has a right to communicate with an official from the consulate of his or her
country, except as provided in subdivision (d).  If the foreign national chooses to exercise that

25 right, the peace officer shall notify the pertinent official in his or her agency or department of the
arrest or detention and that the foreign national wants his or her consulate notified."

26

1   actions (or lack thereof) would have occurred prior to the entry of petitioner's plea.

2          "When a criminal defendant has solemnly admitted in open court that he is in fact

3   guilty of the offense with which he is charged, he may not thereafter raise independent claims

4   relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty

5   plea." <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973). <u>See also</u> <u>McMann v. Richardson</u>, 397

6   U.S. 759, 770-71 (1970); <u>Moran v. Godinez</u>, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general

7   rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal

8   habeas relief on the basis of pre-plea constitutional violations"), <u>overruled on other grounds</u> in

9   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003); <u>Ortberg v. Moody</u>, 961 F.2d 135, 137 (9th Cir.

10  1992) ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional

11  violations that occurred prior to the entry of that plea"); <u>Hudson v. Moran</u>, 760 F.2d 1027, 1029-

12  30 (9th Cir. 1985) (voluntary and intelligent guilty plea precludes federal habeas relief based

13  upon "independent claims" of pre-plea constitutional violations).  These claims involve pre-plea

14  constitutional violations that do not implicate the voluntary or intelligent nature of petitioner's

15  guilty plea.  Therefore, they have been waived and are not cognizable in this federal habeas

16  corpus action.  <u>See</u> <u>United States v. Bohn</u>, 956 F.2d 208, 209 (9th Cir. 1992).

17         Moreover, petitioner has provided no independent evidence of counsel's alleged

18  failures; rather, he has provided only bald allegations of numerous failures to act.  (<u>See</u> Pet. at 3,

19  6-9, 25.)  Such allegations are insufficient to rebut the presumption counsel was acting "within

20  the wide range of reasonable assistance" when he advised petitioner to plead guilty to the charges

21  against him.  <u>Strickland v. Washington</u>, 466 U.S. 668, 691 (1984).  Accordingly, these claims

22  lack merit and should be denied.  Petitioner's other claims of ineffective assistance of trial

23  counsel will be addressed below.

24        b.  <u>Appellate Counsel</u>

25         Petitioner claims his appellate counsel rendered ineffective assistance because she

26  did not sufficiently communicate with him and failed to raise any issues in her appellate brief.

1  He specifically complains that counsel failed to argue he did not understand the plea proceedings.

2  (Pet. at 3, 25.)

3  　　　　　The Sixth Amendment guarantees the effective assistance of counsel.  The United

4  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

5  Strickland v. Washington, supra.  To support a claim of ineffective assistance of counsel, a

6  petitioner must first show that, considering all the circumstances, counsel's performance fell

7  below an objective standard of reasonableness.  466 U.S. at 687-88.  After a petitioner identifies

8  the acts or omissions that are alleged not to have been the result of reasonable professional

9  judgment, the court must determine whether, in light of all the circumstances, the identified acts

10  or omissions were outside the wide range of professionally competent assistance.  Id. at 690;

11  Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish he was

12  prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice is

13  found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

14  result of the proceeding would have been different."  Id. at 694.

15  　　　　　The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

16  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

17  However, an indigent defendant "does not have a constitutional right to compel appointed

18  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

19  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

20  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

21  ability of counsel to present the client's case in accord with counsel's professional evaluation

22  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

23  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

24  not even particularly good appellate advocacy").  There is, of course, no obligation to raise

25  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

26  showing of deficient performance as well as prejudice).  In order to demonstrate prejudice in this

9

1    context, petitioner must show that, but for appellate counsel's errors, he probably would have

2    prevailed on appeal.  Id. at 1434 n.9.

3            Petitioner has failed to demonstrate deficient performance or prejudice with

4    respect to his claims of ineffective assistance of appellate counsel.  In Smith v. Robbins, 528

5    U.S. 259, 283 (2000), the United States Supreme Court upheld California's Wende procedure as

6    constitutionally adequate.  Accordingly, appellate counsel's filing of a Wende brief did not

7    constitute ineffective assistance.  There is no evidence in the record that appellate counsel's

8    investigation into possible meritorious issues to raise on appeal was incomplete, that a more

9    thorough investigation would have revealed meritorious issues on appeal, or that appellate

10   counsel's decision not to raise the claims suggested by petitioner fell below an objective standard

11   of reasonableness.  The California Court of Appeal found no meritorious issues after a review of

12   the record and this court will recommend denial of the issues claimed by petitioner in the instant

13   action.  As noted above, appellate counsel has no obligation to raise meritless issues on appeal.

14   Strickland, 466 U.S. at 687-88.

15           The state court determination with regard to petitioner's claim of ineffective

16   assistance of appellate counsel is not contrary to, or an unreasonable application of Strickland.

17   Accordingly, petitioner is not entitled to habeas relief on that claim.

18               2.  Entry of Plea

19           Petitioner claims his plea of guilty was invalid because he did not speak English

20   and therefore did not understand the proceedings, he thought that he would receive a sentence of

21   eight years in prison instead of a sentence of fifteen years to life, and he did not understand the

22   immigration consequences of his plea.  Several of petitioner's ineffective assistance of counsel

23   claims also implicate the voluntariness of his plea; specifically, his claims that counsel failed to

24   accurately explain the sentence petitioner would likely receive and told him he would receive a

25   sentence of life in prison without parole if he did not enter into a plea agreement.  (Pet. at 3, 4, 6,

26   8, 25.)

1        A guilty plea must be knowing, intelligent and voluntary.  <u>Brady v. United States</u>,

2 397 U.S. 742, 748 (1970); <u>Boykin v. Alabama</u>, 395 U.S. 238, 242 (1969).  "The voluntariness of

3 [a petitioner's] guilty plea can be determined only by considering all of the relevant

4 circumstances surrounding it."  <u>Brady</u>, 397 F.2d at 749.  While a defendant's representations at

5 the time of his guilty plea are not "invariably insurmountable" when challenging the

6 voluntariness of his plea, those representations, as well as any findings made by the judge

7 accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings."

8 <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977). "Solemn declarations in open court carry a strong

9 presumption of verity."  <u>Id.</u> at 74.  <u>See</u> <u>also</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 437 (1983)

10 (plea is presumed valid in habeas proceeding when the pleading defendant was represented by

11 counsel); <u>Little v. Crawford</u>, 449 F.3d 1075, 1081 (9th Cir. 2006), <u>cert</u>. <u>denied</u>, __ U.S. __, 127

12 S. Ct. 2945 (2007); <u>Chizen v. Hunter</u>, 809 F.2d 560, 561 (9th Cir. 1986).  The record must

13 affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary.  <u>Boykin</u>,

14 395 U.S. at 242-43.

15        A guilty plea can be voluntary only if the defendant enters the plea fully aware of

16 the direct consequences of his plea.  <u>Brady</u>, 397 U.S. at 748-49; <u>Torrey v. Estelle</u>, 842 F.2d 234,

17 235 (9th Cir. 1988).  Before accepting a guilty plea, a court must advise a defendant of the "range

18 of allowable punishment" that may be imposed as a result of the plea.  <u>Id.</u> at 235; <u>see also</u> <u>United</u>

19 <u>States ex rel. Pebworth v. Conte</u>, 489 F.2d 266, 268 (9th Cir. 1974).  Under <u>Boykin</u>, the record

20 must reflect that a criminal defendant pleading guilty understands, and is voluntarily waiving, his

21 rights to the privilege against compulsory self-incrimination, to trial by jury and to confront one's

22 accusers.  395 U.S. at 243.  However, specific articulation of the <u>Boykin</u> rights "is not the sine

23 qua non of a valid guilty plea."  <u>Wilkins v. Erickson</u>, 505 F.2d 761, 763 (9th Cir. 1974).  If the

24 record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing

25 on the record is required."  <u>United States v. McWilliams</u>, 730 F.2d 1218, 1223 (9th Cir. 1984).

26 /////

1    After reviewing the record in this case, this court concludes that petitioner's plea

2    of nolo contendere was voluntarily made, with knowledge of the consequences thereof.  See

3    Boykin, 395 U.S. at 243.  The record before this court includes the transcript of petitioner's

4    change of plea hearing, a copy of petitioner's plea agreement and the criminal minute sheet

5    reflecting what transpired at the change of plea hearing.  (Lodged Documents Nos. 1, 12.)

6    Petitioner initialed boxes on the plea agreement to the effect that he understood, among other

7    things, the nature of the charges against him and the fact that he was waiving his rights to the

8    privilege against compulsory self-incrimination, to trial by jury and to confront his accusers.

9    (Lodged Document No. 1.)  See Lonberger, 459 U.S. at 436 (in order for a plea to be voluntary,

10   an accused must receive notice of the nature of the charge against him, "the first and most

11   universally recognized requirement of due process") (quoting Smith v. O'Grady, 312 U.S. 329,

12   334 (1941)).  Petitioner represented that he was entering his plea freely and voluntarily and that

13   no one had made any threats or promises to induce him to enter his plea.  (Lodged Document No.

14   1.)  The criminal minute sheet confirms petitioner was advised of, understood, and knowingly

15   and voluntarily waived his constitutional rights, understood the nature of the charges and

16   possible range of penalties, and had received no "threats or promises."  (Id. at consecutive p. 2.)

17   This is sufficient for purposes of federal habeas review.  Lonberger, 459 U.S. at 436.

18   A consistent theme of petitioner's claims is that he did not understand the change

19   of plea proceedings because he is not fluent in English.  However, the criminal minute sheet and

20   the transcript of the proceedings both reflect that a Spanish language interpreter was present at

21   the change of plea hearing.  (Lodged Document No. 1 at consecutive p. 1; Lodged Document No.

22   12 at 7.)  Petitioner confirmed in his request for a certificate of probable cause for appeal that he

23   was provided a Spanish language interpreter at the change of plea hearing.  (Lodged Document

24   No. 3 at 2.)  In the request for a certificate of probable cause, petitioner stated he had an

25   interpreter at "trial," but that she spoke too fast and he did not understand her.  (Id.)  Petitioner

26   also stated that he did not "understand English very well."  (Id.)  However, there is no

1    independent evidence in the record that petitioner did not understand his Spanish language

2    interpreter or the proceedings.  On the contrary, petitioner signed under penalty of perjury the

3    "defendant's statement" contained on the plea agreement, which stated he had "understood, and

4    initialed each item above, and everything on the form is true and correct."  (Lodged Document

5    No. 1 at consecutive p. 6.)  A review of the change of plea transcript reflects that petitioner

6    answered all of the court's questions clearly and without any apparent hesitation.  (Lodged

7    Document No. 12 at 7-11.)  He responded in the affirmative when asked whether he had gone

8    over the plea form with his attorney "very carefully" and whether he understood it.  (Id. at 7-8.)[5]

9        Petitioner also complains he did not understand the possible sentence he would

10   receive.  However, the plea agreement reflects petitioner initialed a box stating he understood his

11   maximum sentence was fifteen years to life, and he confirmed this at the hearing.  (Lodged

12   Document No. 1 at consecutive p. 5; Lodged Document No. 12 at 8.)  Petitioner also stated he

13   understood he would be on parole for the rest of his life.  (Lodged Document No. 12 at 8.)

14   Finally, as the state appellate court noted, petitioner acknowledged by initialing the plea

15   agreement that he understood the immigration consequences of his plea, which included

16   mandatory deportation and exclusion from the United States.  (Lodged Document No. 1 at

17   consecutive p. 6.)  In short, petitioner's self-serving statements now, that he did not understand

18   the translator and that he did not understand his possible sentence or the immigration

19   consequences of his plea, are not supported by the record and are insufficient to demonstrate his

20   plea of guilty was invalid.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory

21   allegations which are not supported by a statement of specific facts do not warrant habeas

22   relief'") (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

23

24       [5]  Even though the translator did not sign the "Interpreter's Statement" at the end of the
     plea agreement, the lack of a signature, in context, appears to be an inadvertent oversight, given
25   the interpreter's presence as noted in court records and petitioner's unqualified representations to
     the court at the time of entry of his guilty plea that he understood the nature and substance of the
26   proceeding.  (See Lodged Document #1 at consecutive p. 7.)

                                                13

1           With regard to petitioner's claims about the advice he received from his trial

2  counsel, he is required to show such a  "serious dereliction" by his attorney that the guilty plea

3  was not a knowing and intelligent act.  McMann, 397 U.S. at 774.  Petitioner has failed to make

4  such a showing here.  It is true that a defendant may attack the voluntary and intelligent character

5  of his plea by showing he received incompetent advice from counsel in connection with the plea.

6  Tollett, 411 U.S. at 267 (a defendant who pleads guilty upon the advice of counsel "may only

7  attack the voluntary and intelligent character of the guilty plea by showing that the advice he

8  received from counsel was not within the standards set forth in McMann" (holding that all

9  defendants facing felony charges are entitled to the effective assistance of competent counsel);

10  Mitchell v. Superior Court for City of Santa Clara, 632 F.2d 767, 769-70 (9th Cir. 1980).  To

11  prevail on such a claim, a petitioner must show that: (1) counsel's representation fell below the

12  range of competence demanded of attorneys in criminal cases, and (2) "there is a reasonable

13  probability that, but for counsel's errors, he would not have pleaded guilty and would have

14  insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  Petitioner has failed to meet

15  either of these two tests.  There is no independent evidence in the record that petitioner's counsel

16  advised him he would receive an eight year sentence, or anything less than the sentence he

17  actually received.  Petitioner's claim that his counsel told him he would receive a sentence of life

18  without parole if he failed to enter into the plea agreement is also unsupported and is contradicted

19  by the plea agreement, in which petitioner acknowledged he had not been induced to enter the

20  agreement "by any promise or representation of any kind."  (Lodged Document No. 1 at

21  consecutive p. 4.)

22           Accordingly, for all of the reasons described above, petitioner is not entitled to

23  relief on his claim that his plea was involuntary.

24  /////

25  /////

26  /////

3.  Failure to Give Warnings Prior to Interrogation

Petitioner claims his "federal and state constitutional rights were violated when police questioned him without advising him of his constitutional rights" and "his rights under the Vienna Convention."[6]  (Pet. at 3.)

The record reflects petitioner was apprehended at a bus station in Marysville. (Lodged Document No. 11 at 32.)  He was transported to a police station and interrogated.  (Id.) During the interrogation, petitioner admitted having sexual intercourse with the victim.  (Id.) Petitioner is apparently claiming that his statements to police should have been excluded from evidence because of the failure of police to advise him of his constitutional rights through the issuance of Miranda warnings, and of his right to contact the Mexican consulate.

These claims involve the alleged deprivation of constitutional rights that occurred prior to the entry of petitioner's plea and therefore are not cognizable in this federal habeas action.  Tollett, 411 U.S. at 267; McMann, 397 U.S. at 770-71.  With respect to petitioner's claims involving notification of the Mexican Consulate, it is not clearly established law that the Vienna Convention creates a right enforceable by an individual who has been arrested.  See Medellin v. Dretke, 544 U.S. 660, 664 (2005) (noting that a violation of the Vienna Convention may not be cognizable in a federal habeas proceeding); United States v. Lombera-Camorlinga, 206 F.3d 882, 885 (9th Cir. 2000) ("The Supreme Court has treated the issue of whether the provision creates any judicially enforceable rights as an open question"); United States v. Minjares-Alvarez, 264 F.3d 980, 986 (10th Cir. 2001) ("[i]t remains an open question whether

---

[6]  "The Vienna Convention is an international treaty that governs relations between individual nations and foreign consular officials."  Sanchez-Llamas v. Oregon, 548 U.S. 331, 366-67 (2006) (Breyer, J., dissenting).  "Its object is to assure consular communication and assistance to such nationals, who may not fully understand the host country's legal regime or even speak its language."  Id.

1    the Vienna Convention gives rise to any individually enforceable rights").  Further, as noted by

2    the California Court of Appeal, "the failure to advise a defendant of his rights under the Vienna

3    Convention, as required by [California] Penal Code section 834c, does not result in the exclusion

4    of a postarrest statement."  (Opinion at 3).  Accord Sanchez-Llamas, 548 U.S. at 349 (even

5    assuming the Vienna Convention grants individual rights, suppression of evidence "would be a

6    vastly disproportionate remedy"); Lombera-Camorlinga, 206 F.3d at 883, 885 (Vienna

7    Convention does not create an individual right enforceable by way of a motion to suppress

8    evidence of post-arrest statements made by a foreign national before being advised of the right to

9    notification of his consulate).  See also Cornejo v. County of San Diego, 504 F.3d 853 (9th Cir.

10   2007) (Vienna Convention does not create judicially enforceable rights that can be vindicated in

11   a civil rights action).

12        Even assuming suppression of evidence was an appropriate remedy for a violation

13   of the Vienna Convention, it would not be appropriate in this case because petitioner has not

14   demonstrated he was prejudiced by a violation of the treaty.  See Breard v. Greene, 523 U.S. 371,

15   377 (1998) (even assuming a claim based on a violation of the Vienna Convention was properly

16   raised, "it is extremely doubtful that the violation should result in the overturning of a final

17   judgment of conviction without some showing that the violation had an effect on the trial");

18   Murphy v. Netherland, 116 F.3d 97, 100 (4th Cir. 1997) (noting that petitioner had failed to

19   establish prejudice from the alleged violation of the Vienna Convention because he was unable to

20   explain how contacting the Mexican consulate would have changed either his guilty plea or his

21   sentence).  There is no evidence petitioner would have contacted the consulate had he been aware

22   of his Vienna Convention rights, that he needed assistance from the consulate, or that contacting

23   the consulate would have affected his guilty plea or his sentence.

24        Petitioner also claims "the authorities violated his constitutional rights by failing

25   to inform the Mexican Consulate of his arrest."  (Pet. at 3.)  The court assumes this allegation is a

26   variation of his claim that his confession should have been excluded because of the failure of the

1    police to notify him of his right to contact the consulate.  As such, this claim should be denied for

2    the same reasons explained above.  In addition, "the contact with the foreign consulate is

3    required only if the foreign national requests it.  Domestic law enforcement authorities thus have

4    no obligation to the foreign consulate unless the foreign national himself triggers one."

5    <u>Lombera-Camorlinga</u>, 206 F.3d at 885.  Because petitioner did not request that his consulate be

6    notified of his arrest, it appears the police department had no obligation to provide such

7    notification.

8            For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

9    application for a writ of habeas corpus be denied.

10            These findings and recommendations are submitted to the United States District

11    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12    days after being served with these findings and recommendations, any party may file written

13    objections with the court and serve a copy on all parties.  Such a document should be captioned

14    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15    shall be served and filed within ten days after service of the objections.  The parties are advised

16    that failure to file objections within the specified time may waive the right to appeal the District

17    Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18    DATED:  June 11, 2009.

19

20

21    _____
       U.S. MAGISTRATE JUDGE

22

23

24

25

26    8:garcia1404.hc